**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

CARDINAL SQUARE, LLC,

      Plaintiff,                                                   Case No. 1:23-cv-00114-JRS-MJD
                                          Hon. James R. Sweeney, II
v.                                                                               Magistrate Judge Mark J. Dinsmore

QBE SPECIALTY INSURANCE COMPANY,

      Defendant.

_____

**DEFENDANT'S ANSWER AND DEFENSES TO COMPLAINT, COUNTERCLAIM AND RELIANCE ON JURY DEMAND**

      Defendant QBE Specialty Insurance Company ("Defendant" or "QBE Specialty"), by counsel, for its Answer to Plaintiff's Complaint, states as follows:

      1.      QBE Specialty, upon information and belief, admits the allegations contained in Paragraph 1.

      2.      QBE Specialty denies the allegations contained in Paragraph 2 as untrue. Further answering said paragraph, QBE Specialty states that it is a North Dakota corporation with its principal place of business in New York, New York.

      3.      QBE Specialty denies the allegations in Paragraph 3 as untrue as originally pleaded. Further answering, QBE Specialty states that jurisdiction is proper in the current Court pursuant to 28 U.S.C. §1332.

      4.      QBE Specialty denies the allegations in Paragraph 4 as originally pleaded. Further answering, QBE Specialty states that venue is proper in the current Court pursuant to 28 U.S.C. §1391(b)(2).

5.      The allegations in Paragraph 5 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof.

6.      QBE Specialty denies the allegations contained in Paragraph 6 in the manner and form alleged, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty states that Cardinal Square, LLC ("Cardinal") contracted with QBE Specialty for certain coverage under Commercial Lines Policy No. VSH1000010-00 for the period of August 1, 2020 to August 1, 2021 ("Policy"), that the Policy is in writing and speaks for itself, and QBE Specialty denies any aspect of the allegations in this paragraph that are inconsistent therewith.

7.      QBE Specialty denies the allegations contained in Paragraph 7 set forth full and complete recitations of the language contained in the Policy. Further answering said paragraph, QBE Specialty states that the Policy is in writing and speaks for itself, relies upon the complete terms, conditions, exclusions and provisions therein,  and otherwise denies any aspect of the allegations in this paragraph that are inconsistent therewith.

8.      QBE Specialty objects to the allegations contained in Paragraph 8 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty states that the Policy is in writing and speaks for itself, relies upon the terms, conditions, exclusions and provisions therein, and denies any aspect of the allegations in this paragraph that are inconsistent therewith.

9.      QBE Specialty denies the allegations contained in Paragraph 9 set forth full and complete recitations of the language contained in the Policy. Further answering said

paragraph, QBE Specialty states that the Policy is in writing and speaks for itself, relies upon the complete terms, conditions, exclusions and provisions therein, and denies any aspect of the allegations in this paragraph that are inconsistent therewith.

10.    QBE Specialty denies the allegations contained in Paragraph 10 set forth full and complete recitations of the language contained in the Policy. Further answering said paragraph, QBE Specialty states that the Policy is in writing and speaks for itself, relies upon the complete terms, conditions, exclusions and provisions therein, and denies any aspect of the allegations in this paragraph that are inconsistent therewith.

11.    QBE Specialty denies the allegations contained in Paragraph 11 set forth full and complete recitations of the language contained in the Policy. Further answering said paragraph, QBE Specialty states that the Policy is in writing and speaks for itself, relies upon the complete terms, conditions, exclusions and provisions therein, and denies any aspect of the allegations in this paragraph that are inconsistent therewith.

12.    QBE Specialty objects to the allegations contained in Paragraph 12 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in Paragraph 12 set forth full and complete recitations of the language contained in the Policy, states that the Policy is in writing and speaks for itself, relies upon the complete terms, conditions, exclusions and provisions therein, and denies any aspect of the allegations in this paragraph that are inconsistent therewith.

13.    The allegations in Paragraph 13 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves

Cardinal to its proofs thereof. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

14.    The allegations in Paragraph 14 are not directed to QBE Specialty, do not relate to the specific events at issue in this action, set forth matters requiring scientific or technical opinions, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to any facts or events that may be at issue in this action as contained in the allegations in this paragraph.

15.    QBE Specialty denies the allegations contained in Paragraph 15, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

16.    The allegations in Paragraph 16 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall

within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to any facts or events that may be at issue in this action as contained in the allegations in this paragraph.

17.    The allegations in Paragraph 17 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage or that it has complied with all policy provisions and conditions for coverage. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to any facts or events that may be at issue in this action as contained in the allegations in this paragraph.

18.    The allegations in Paragraph 18 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage or that it has complied with all policy provisions and conditions for coverage. Further responding, QBE Specialty otherwise denies Cardinal's characterizations,

opinions, conclusions, and commentary relating to any facts or events that may be at issue in this action as contained in the allegations in this paragraph.

19.    The allegations in Paragraph 19 are not directed to QBE Specialty, do not relate specifically to the matters at issue in this action, set forth matters requiring scientific or technical opinions, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

20.    The allegations in Paragraph 20 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage or that it has complied with all policy provisions and conditions for coverage.

21.    QBE Specialty denies the allegations contained in Paragraph 21 as they relate to QBE Specialty, states that any referenced communications speak for themselves, and leaves Cardinal to its proofs thereof. Further answering said paragraph as it relates to Cardinal, QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth,

and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty otherwise denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage or that it has complied with all policy provisions and conditions for coverage.

22.    QBE Specialty admits only that Cardinal submitted a claim for coverage under the policy, denies the remaining allegations in Paragraph 22, and leaves Cardinal to its proofs thereof. Further responding subject to objection, any referenced documents are in writing and speak for themselves, and QBE Specialty denies any aspect of these allegations that are inconsistent therewith. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

23.    QBE Specialty admits only that it engaged one or more consultants in connection with its investigation of Cardinal's claims for insurance coverage, including HVACi, denies the remaining allegations therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph as it relates to HVACi, QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering, QBE Specialty states that any information contained on HVACi's website is HVACi's and speaks for itself, and QBE Specialty denies any aspect of these allegations that are inconsistent therewith.

24.    QBE Specialty admits only that it retained HVACi in connection with its investigation of Cardinal's claim for insurance coverage, and denies the remaining allegations therein including in the manner and form alleged, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

25.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claim for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 25 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph subject to objection, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

26.    QBE Specialty admits only that it issued payments to Cardinal in connection with Cardinal's claims for insurance coverage, which payment information speaks for itself, and denies each of Cardinal's allegations and characterizations in Paragraph 26 relating to said payment or related communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal

to its proofs thereof. Further answering said paragraph subject to objection, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

27.    QBE Specialty admits only that it has issued payments to Cardinal in connection with Cardinal's claims for coverage, which payment information speaks for itself, and denies each of Cardinal's allegations and characterizations in Paragraph 27 relating to said payment, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

28.    The allegations in Paragraph 28 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof.

29.    The allegations in Paragraph 29 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further responding, QBE Specialty otherwise denies

Cardinal's characterizations, opinions, conclusions, and commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

30.    The allegations in Paragraph 30 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof.

31.    The allegations in Paragraph 31 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

32.    QBE Specialty admits only that it has had communications with Cardinal with respect to Cardinal's claim for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 32 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

33.    The allegations in Paragraph 33 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof.

34.    The allegations in Paragraph 34 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof.

35.    The allegations in Paragraph 35 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering said paragraph subject to objection, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

36.    QBE Specialty admits only that only that Carinal had experienced  multiple HVAC equipment issues prior to the referenced lightning strikes at issue in this case, which it concealed from or failed to disclose to QBE Specialty, and denies the balance of the allegations contained in Paragraph 36 as untrue and/or in the manner and form alleged, and leaves Cardinal to its proofs thereof. Further answering said paragraph subject to objection, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

37.    QBE Specialty admits only that it has had communications with Cardinal and/or its broker or other representatives regarding various aspects of its claim for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 37 relating to any such communications,

QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

38.    QBE Specialty admits only that it has had communications with Cardinal and/or its broker or other representatives regarding its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 38 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

39.    QBE Specialty denies the allegations contained in Paragraph 39 as untrue and/or in the manner and form alleged, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

40.    QBE Specialty admits only that it engaged one or more consultants in connection with its investigation of Cardinal's claims for coverage, including one or more forensic accounting firms or professionals, denies any aspect of these allegations that are inconsistent therewith, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

41.     QBE Specialty admits only that it has had communications with Cardinal and/or its broker or other representatives regarding its claims for coverage, which communications speak for themselves, QBE Specialty admits only that it has had communications with Cardinal in connection with its claim for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 41 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

42.     QBE Specialty admits only that it has had communications with Cardinal and/or its broker or other representatives in connection with its claims for coverage, which communications speak for themselves, QBE Specialty admits only that it has had communications with Cardinal in connection with its claim for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 42 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

43.     QBE Specialty admits only that it has had communications with Cardinal and/or its broker or other representatives in connection with its claims for coverage, which communications speak for themselves, QBE Specialty admits only that it has had communications with Cardinal in connection with its claim for coverage, which communications speak for themselves, and denies Cardinal's allegations and

characterizations contained in Paragraph 43 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

44.    QBE Specialty admits only that it has had communications with Cardinal and/or its broker or other representatives in connection with its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 44 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

45.    QBE Specialty admits only that it has had communications with various entities in connection with Cardinal's claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 45 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

46.    QBE Specialty denies the allegations contained in Paragraph 46 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage. Further responding, QBE Specialty otherwise denies

Cardinal's characterizations, opinions, conclusions, and commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

47.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 47 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

48.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 47 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

49.    QBE Specialty neither admits nor denies the allegations contained in Paragraph 49 for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and

commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

50.    QBE Specialty neither admits nor denies the allegations contained in Paragraph 50 for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

51.    QBE Specialty neither admits nor denies the allegations contained in Paragraph 51 for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further responding, QBE Specialty otherwise denies Cardinal's characterizations, opinions, conclusions, and commentary relating to facts or events that may be at issue in this action as contained in the allegations in this paragraph.

52.    QBE Specialty denies the allegations in Paragraph 52 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

53.    QBE Specialty denies the allegations in Paragraph 53 as untrue and/or in the manner and form alleged, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all

of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

54.    The allegations in Paragraph 54 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof.

55.    The allegations in Paragraph 55 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof.

56.    The allegations in Paragraph 56 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

57.    QBE Specialty denies the allegations in Paragraph 57 as untrue and/or in the manner and form alleged, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

58.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 58 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

59.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 59 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

60.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 60 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

61.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, which communications speak for themselves, and

denies Cardinal's allegations and characterizations contained in Paragraph 61 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

62.     QBE Specialty denies the allegations contained in Paragraph 62 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

63.     QBE Specialty admits only that limited components and/or equipment were provided to representatives of QBE for inspection or observation, and denies the remaining allegations contained in Paragraph 63 as untrue, and leaves Cardinal to its proofs thereof.

64.     QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, including through counsel, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 64 relating to such communications.

65.     QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, including through counsel, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 65 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and

leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

66.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, including through counsel, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 66 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

67.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, including through counsel, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 67 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at

issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

68.     QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, including through counsel, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 68 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

69.     QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, including through counsel, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 69 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

70.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, including through counsel, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 71 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

71.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, including through counsel, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 71 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

72.    QBE Specialty denies the allegations contained in Paragraph 72, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall

within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

73.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 73 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

74.    QBE Specialty denies the allegations contained in Paragraph 74 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

75.    QBE Specialty denies the allegations contained in Paragraph 75 as untrue and/or in the manner and form alleged, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

76.    QBE Specialty objects to the allegations contained in Paragraph 76 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

77.    QBE Specialty admits only that it made an accommodation payment to Cardinal in connection with its claims for coverage, which payment and any related communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 77 relating to any such payment or communication, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

78.    QBE Specialty admits only that it has had communications with Cardinal in connection with its claims for coverage, which communications speak for themselves, and denies Cardinal's allegations and characterizations contained in Paragraph 78 relating to any such communications, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its

proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

79.     QBE Specialty admits only that it communicated its declination of Cardinal's claim for coverage under the Policy in writing by correspondence date March 1, 2022, which correspondence speaks for itself, and denies Cardinal's allegations and characterizations contained in Paragraph 79 relating to this correspondence, QBE's investigation, the claim at issue, any purported conclusions by alleged experts, the claims, coverage, and any alleged knowledge, position, or conclusions attributed to QBE Specialty referenced therein, and leaves Cardinal to its proofs thereof.

80.     QBE Specialty denies the allegations contained in Paragraph 80 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

81.     QBE Specialty denies the allegations contained in Paragraph 81 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

82.     QBE Specialty denies the allegations contained in Paragraph 82 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty

denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

83.     QBE Specialty denies the allegations contained in Paragraph 83 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

84.     QBE Specialty denies the allegations contained in Paragraph 84 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

85.     QBE Specialty denies the allegations contained in Paragraph 85 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

86.     QBE Specialty denies the allegations contained in Paragraph 86 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

87.     QBE Specialty denies the allegations contained in Paragraph 87 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

88.     QBE Specialty denies the allegations contained in Paragraph 88 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

89.     QBE Specialty denies the allegations contained in Paragraph 89 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

90.     QBE Specialty denies the allegations contained in Paragraph 90 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

91.     QBE Specialty denies the allegations contained in Paragraph 90 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at

issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

92.    The allegations in Paragraph 92 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof.

93.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

94.    The allegations in Paragraph 94 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

95.    The allegations in Paragraph 94 are not directed to QBE Specialty, and QBE Specialty neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves Cardinal to its proofs thereof. Further answering said paragraph, QBE Specialty denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall

within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

96.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

97.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

98.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

99.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

100.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

101.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

102.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

103.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

104.    QBE Specialty denies the allegations contained in Paragraph 93 as untrue, and leaves Cardinal to its proofs thereof.

105.    QBE Specialty adopts and incorporates be reference its responses to the allegations set forth in all previous paragraphs as if fully restated here.

106.     QBE Specialty admits only that it issued the Policy, as described above, which is in writing and speaks for itself, and denies any remaining allegations in Paragraph 106, and leaves Cardinal to its proofs thereof.

107.     QBE Specialty objects to the allegations contained in Paragraph 107 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

108.     QBE Specialty objects to the allegations contained in Paragraph 108 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

109.     QBE Specialty admits that Cardinal Square had paid premiums in connection with the Policy at the time of Cardinal's claim, but denies any remaining allegations in Paragraph 109, and otherwise denies that Cardinal has met its burden to prove that some or all of the alleged losses at issue fall within the coverage of the Policy or that it has complied with all policy provisions and conditions for coverage.

110.     QBE Specialty objects to the allegations contained in Paragraph 110 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

111.     QBE Specialty objects to the allegations contained in Paragraph 111 as they set forth legal conclusions to which no response is required. Responding subject to

objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

112.    QBE Specialty objects to the allegations contained in Paragraph 112 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

113.    QBE Specialty objects to the allegations contained in Paragraph 113 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

114.    QBE Specialty objects to the allegations contained in Paragraph 114 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

115.    QBE Specialty adopts and incorporates be reference its responses to the allegations set forth in all previous paragraphs as if fully restated here.

116.    QBE Specialty objects to the allegations contained in Paragraph 116 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

117.    QBE Specialty objects to the allegations contained in Paragraph 117 as they set forth legal conclusions to which no response is required. Responding subject to

objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

118.    QBE Specialty objects to the allegations contained in Paragraph 118 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

119.    QBE Specialty objects to the allegations contained in Paragraph 119 as they set forth legal conclusions to which no response is required. Responding subject to objection, to the extent it is required to do so, QBE Specialty denies the allegations contained in this paragraph as untrue, and leaves Cardinal to its proofs thereof.

WHEREFORE, QBE Specialty respectfully requests that the Court:

a.    Dismiss Count I, with prejudice;

b.    Dismiss Count II, with prejudice;

c.    Otherwise declare the rights and obligations of the parties, if any, under the Policy, with respect to Cardinal's claim;

d.    Award QBE its reasonable fees and costs incurred in responding to this action; and

e.    Award any other relief deemed equitable and just.

### **DEFENSES**

Defendant QBE Specialty Insurance Company ("QBE Specialty") has undertaken in good faith to list all of the defenses that it may have with respect to Cardinal's claims as described in the Complaint. However, QBE Specialty reserves the right to reevaluate, restate and/or delete defenses and/or to assert additional defenses as further information and documentation is obtained. Further, by asserting the following as defenses, QBE

Specialty does not admit that it bears the burden of proof on any of the issues raised by such defenses. Additionally, QBE Specialty does not waive any of its rights under the QBE Specialty policy at issue in this action ("the Policy") or at law with respect to the claims at issue herein. Subject to and without waiving the foregoing limitations and reservations, QBE Specialty identifies the following defenses upon which it may rely in this action:

Subject to and without waiving any of the foregoing, QBE Specialty identifies the following affirmative defenses upon which it may rely during the pretrial phase of this action or at the time of trial:

1.      Cardinal has failed to demonstrate that coverage is afforded under the Policy, and the application of certain terms, conditions, and exclusions in the Policy otherwise apply to preclude coverage for Cardinal's claims.

2.      There is no coverage under the Policy's Building and Personal Property coverage ("BPP Coverage") for the reason that Cardinal has failed to demonstrate the existence of direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss, as those terms are defined in the Policy.

3.      Cardinal has not demonstrated that any of the losses for which it seeks coverage in this action in connection with the October 20, 2020 lightning strike were directly caused by a Covered Cause of Loss under the BPP Coverage.

4.      The damages and losses Cardinal seeks were caused, in whole or in part, by pre-lightning conditions, failures, defects, losses, problems and operational issues caused by other entities.

5.     Cardinal's business records demonstrate that Cardinal's HVAC system suffered from ongoing conditions, failures, defects, losses, problems and operational issues for years prior to the October 20, 2020 lighting strike.

6.     Coverage under the BPP Coverage is or may be excluded by one or more of the following exclusions that preclude coverage for any loss or damage caused by or resulting from:

    a.  the failure of power, communication, water, or other utility service supplied to the described premises, however caused, if the failure originates away from the described premises, or originates at the described premises, but only if such failure involves equipment used to supply the utility service supplied to the described premises from a source away from the described premises.

    b.  artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any electrical device, appliance, system or network.

    c.  wear and tear;

    d.  corrosion, deterioration, or hidden or latent defect, or any quality in property that causes it to damage or destroy itself;

    e.  mechanical breakdown;

    f.  faulty, inadequate, or defective design, specifications, workmanship, materials, or maintenance;

    g.  the presence or condensation of humidity, moisture, or vapor occurring over a period of 14 days or more;

    h.  neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss;

    i.  weather conditions if they contribute in any way with another enumerated cause or event excluded elsewhere in the BPP Coverage to produce the loss or damage;

    j.  dampness or dryness of atmosphere or changes in or extremes of temperature, unless the stated exceptions apply.

9.     There is no coverage under the BPP Coverage on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced, or unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

10.     The BPP Coverage provides that in the event of a covered loss, QBE Specialty at its option will (1) pay the value of lost or damaged property, (2) pay the cost of repairing or replacing the lost or damaged property, (3) take all or any part of the property at an agreed or appraised value, or (4) repair, rebuild or replace the property with other property of like kind and quality, whichever is less.

11.     Cardinal has not demonstrated that any property that may be proven to be damaged by lightning has been repaired or replaced, to potentially give rise to coverage under the BPP Coverage in the Policy. Cardinal's claims otherwise seek coverage for allegedly damaged property that has not been repaired or replaced.

12.     Any actual repairs or replacements that were made were not made by or on behalf of Cardinal as soon as reasonably possible after the alleged loss or damage, as required by the BPP Coverage in the Policy.

23.     The BPP Coverage provides that QBE Specialty will not pay for loss or damage on a replacement cost basis more than the least of the Limit of Insurance applicable to the lost or damaged property, the cost to replace the lost or damaged property with other property, or the amount actually spent that is necessary to repair or replace the lost or damaged property. This is limited to repair or replacement of the damaged property.

24.     Cardinal has not provided to QBE Specialty evidence demonstrating that less expensive options associated with repairing or replacing any actual lightning-damaged components do not exist.

25.     There is no coverage under the Policy to the extent that Cardinal has not complied with each of the Duties In The Event of Loss or Damage.

26.     The "Business Income (and Extra Expense) Coverage Form" ("BI/EE Coverage") in the Policy only provides coverage for "the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration,'" as those terms are defined in the Policy.

27.     The "suspension" referenced in the BI/EE Coverage must be caused by "direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations," and the loss or damage must be caused by or result from a Covered Cause of Loss.

28.     The BI/EE Coverage requires that "[t]he loss or damage must be caused by or result from a Covered Cause of Loss." QBE Specialty has not received any evidence demonstrating that any necessary expenses were incurred by Cardinal that were directly caused by the October 20, 2020 lightning strike.

29.     There is no coverage under the BI/EE Coverage in the Policy if the definitions of "operations," "suspension," and "period of restoration" are not met.

30.     No evidence has been provided to date by Cardinal that:

    a.  It has sustained actual losses of Business Income due to the necessary "suspension" of its "operations" caused by "direct physical loss of or damage to property at premises" as a result of the October 20, 2020 lightning strike, or

    b.  its operations have actually slowed or ceased directly as a result of the October 20, 2020 lightning strike, or

    c.  any portion of the Property has in fact been rendered "untenantable" directly as a result of the October 20, 2020 lightning strike.

31.     Absent direct physical loss or damage from lightning, by definition, Cardinal cannot establish a "period of restoration" potentially giving rise to coverage under the BI/EE Coverage in the Policy.

32.    QBE Specialty otherwise has not received adequate proofs from Cardinal on the foregoing to support coverage despite numerous requests for such proofs.

33.    The BI/EE Coverage Form provides coverage for Extra Expense, which is defined to mean "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." QBE Specialty has not received any evidence demonstrating that any necessary expenses were incurred by Cardinal that were directly caused by the October 20, 2020 lightning strike. Absent direct physical loss or damage from lightning, by definition, Cardinal also cannot establish a "period of restoration" potentially giving rise to coverage under the BI/EE Coverage in the Policy.

34.    Beyond the foregoing, pursuant to the Policy's "Commercial Property Conditions" Endorsement, coverage is only provided for loss or damage commencing during the Policy's policy period. Cardinal Square has been aware of the same issues relating to the property and HVAC systems at issue in this action since 2016 or earlier, and has been litigating against other entities in connection with these issues since 2018. Accordingly, Cardinal's claims involve loss or damage to property that commenced outside of the policy period for the Policy, and therefore is not covered.

35.    The Policy also contains a "Concealment, Misrepresentation or Fraud" Condition, which precludes coverage for concealing, misrepresenting, or failing to disclose any material fact or any fraud committed at any time relative to any claim, loss, or damage. Cardinal failed to disclose to and/or concealed from QBE Specialty the preexisting HVAC problems, failures, and related losses, which reportedly date back to at least 2016, either in connection with its procurement of insurance or its claims for coverage under the Policy.

36.    Cardinal failed to disclose to and/or concealed from QBE Specialty the prior claims against other entities relating to the preexisting HVAC problems, failures, and related losses, including through Cardinal's lawsuit against LG, which dates back to 2018, either in connection with its procurement of insurance or its claims for coverage under the Policy. Cardinal therefore concealed, misrepresented, or failed to disclose material facts and/or committed fraud in connection with the claims, losses, and damages sought from QBE Specialty under the Policy in violation of this Policy Condition.

37.    The Policy Conditions also require that Cardinal cooperate with QBE Specialty in connection with any claim for coverage. In addition to the foregoing, Cardinal failed to cooperate with QBE Specialty in connection with its claims, including its failure or refusal to provide necessary proofs, documents, items, and other information relating to its claims as reasonably requested by QBE Specialty on numerous occasions.

38.    Coverage under both the Building and BI/EE Coverage Forms does not apply to losses or damage caused directly or indirectly by the failure or surge of power. (Special Form § B.1.e.). To the extent that any of the losses or damage claimed by Cardinal were caused directly or indirectly by the failure or surge of power, there is no coverage under the Policy.

39.    Coverage is not available under the Building and BI/EE Coverage Forms for loss or damage caused by or resulting from artificially generated electrical or electromagnetic energy, including electrical current, arcing, charge or electromagnetic energy, that disturbs, disrupts, or otherwise interferes with any electronic device, system, network, or device, system or network using cellular or satellite technology (Special Form § B.2.a.). To the extent that any of the losses or damage claimed by Cardinal were caused by

or resulted from artificially generated electrical or electromagnetic energy, there also is no coverage under the Policy.

40.    Coverage is only available under the Equipment Breakdown Coverage for direct physical damage to Covered Property that is the direct result of an "accident" or "electronic circuitry impairment," as those terms are defined in the Policy. There is no coverage available under this form unless the aforementioned definitions have been satisfied, and if any of the exclusions to that coverage apply.

41.    Other Policy Conditions relating to notice, consent, and loss payment and valuation also may apply to preclude or limit, in whole or in part, any coverage that otherwise may be available for Cardinal's claims.

43.    Cardinal's claim under the Policy is subject to the applicable limits of the Policy, and any applicable deductibles or self-insured retentions.

44.    There is no insurance coverage under the Policy, in whole or in part, to the extent that any other provision, term, definition, condition, endorsement, limitation, or exclusion in the Policy not specifically identified herein applies to preclude coverage.

45.    There is no insurance coverage under the Policy, in whole or in part, to the extent that Cardinal has failed, in whole or in part, to mitigate, minimize, or avoid damages.

46.    QBE Specialty has acted in good faith and in compliance with all applicable law with respect to Cardinal's claim for coverage.

47.    QBE Specialty has not made an unfounded refusal to pay policy proceeds, caused an unfounded delay in making payment, deceived Cardinal, or exercised an unfair advantage to pressure Cardinal into a settlement of Cardinal's claim for coverage.

48.     QBE Specialty has not violated any actual or alleged statutory duties of good faith and fair dealing, including those identified in paragraph 117 of the Complaint.

49. QBE Specialty has not engaged in a conscious course of action of malice, fraud, gross negligence, or oppressiveness.

50.     QBE Specialty has a good faith dispute over Cardinal's claim for coverage.

51.     Cardinal's Complaint may be, barred, in whole or in part, because of waiver and/or estoppel, res judicata, collateral estoppel, abatement or release and satisfaction.

52.     Cardinal's Complaint is, or may be, barred, in whole or in part, by the applicable statute of limitations, or other applicable time limitations, including the doctrine of laches, and including any time limitations set forth in the Policy.

53.     QBE Specialty reserves the right to include additional defenses as they become apparent through discovery or otherwise.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Plaintiff QBE Specialty Insurance Company ("QBE Specialty"), by counsel, brings this Counterclaim seeking Declaratory Judgment based upon the matters discussed below, and in support thereof alleges as follows:

## INTRODUCTION AND BACKGROUND

1.     This is a Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201 and 2202, respectively, in which QBE Specialty seeks a determination of its rights and responsibilities, if any, under an insurance policy issued by QBE Specialty to Cardinal Square, LLC ("Cardinal").

2.     This counterclaim for declaratory judgment ("Counterclaim") arises in response to Cardinal's claims seeking coverage from QBE Specialty in connection with

losses allegedly suffered as a result of an October 20, 2020 lightning strike at an apartment complex located at 1623 W. University Ave and 428 N. Dill Street in Muncie, Indiana owned and/or operated by Cardinal ("Property").

3.      Cardinal seeks to recover from QBE Specialty certain property losses at the Property allegedly resulting from the lightning, including damages and losses claimed in connection with its HVAC system and related components at the Property.

4.      QBE Specialty made certain payments to Cardinal in connection with its claim, however, it ultimately declined coverage following its investigation of the claim.

5.      Specifically, QBE Specialty believes that Cardinal has not demonstrated that coverage is owed under the Policy as a threshold matter, and otherwise believes that certain terms, conditions, and exclusions in the policy issued to Cardinal otherwise do not afford and/or preclude coverage for the claimed losses, in whole or in part.

6.      QBE Specialty seeks a determination that there is no coverage for Cardinal under the QBE Specialty Policy, and that it does not have any obligation to provide any payments to Cardinal in connection with its claim.

**PARTIES**

7.      At all times hereinafter mentioned, Plaintiff QBE Specialty was and is a corporation duly formed and existing by virtue of the laws of the State of North Dakota with its principal place of business in the State of New York.

8.      Upon information and belief, at all times hereinafter mentioned Defendant Cardinal was and is a limited liability company duly formed and existing by virtue of the laws of the State of Indiana with its principal place of business in the State of Michigan.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of costs.

10.    This Court has personal jurisdiction over Cardinal because at all times relevant hereto Defendant was formed, domiciled, located, or resided in the State of Indiana, transacted business in the State of Indiana, enjoyed legal status or capacity within the State of Indiana, and/or engaged in other activities within the State of Indiana.

11.    The exercise of personal jurisdiction by this Court over the aforementioned entities is otherwise appropriate under Indiana's Due Process Clause, and does not offend against traditional notions of justice or fair play or the due process of law.

12.    Venue lies in this Court pursuant to 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to the claim at issue occurred in this district.

## CLAIM FOR DECLARATORY RELIEF

13.    Declaratory relief and other appropriate relief are proper and warranted pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201-2202.

14.    Cardinal contracted with QBE Specialty for certain coverage under Commercial Lines Policy No. VSH1000010-00 for the period of August 1, 2020 to August 1, 2021 ("Policy"). A complete copy of the QBE Specialty Policy is attached hereto as Exhibit A.

15.    QBE Specialty disputes that any coverage obligation is owed under that Policy in connection with Cardinal's claim seeking damages and losses allegedly resulting from an October 20, 2020 lightning strike.

16.    Based upon QBE Specialty's investigation of the claim, Cardinal has failed to demonstrate that coverage is afforded under the Policy as a threshold matter, and the application of certain terms, conditions, and exclusions in the Policy otherwise apply to preclude coverage for Cardinal's claims.

17.    There is a real, substantial, and justiciable issue in controversy between the parties hereto with respect to the parties' rights and obligations in connection with coverage for the claim asserted by Cardinal under the Policy, which sets forth those rights and obligations.

18.    A judicial determination and a declaration of the rights and obligations of the parties hereto is necessary and appropriate at this time because QBE Specialty has no other adequate remedy at law which will resolve the current controversy.

**THE QBE SPECIALTY POLICY AND BASES FOR NO COVERAGE**

19.    The QBE Specialty Policy issued to Cardinal includes Building and Personal Property Coverage and Business Income and Extra Expense Coverage relative to this dispute. See Exhibit A.

20.    As further described below, Cardinal has not satisfied the terms for either coverage part and coverage is not afforded. The terms, exclusions, and conditions in these forms and/or as otherwise provided by the Policy separately preclude any coverage obligation relating to Cardinal's claim and alleged losses under the Policy.

**Building and Personal Property Coverage**

21.    The QBE Specialty Policy's Building and Personal Property coverage ("BPP Coverage") provides that QBE Specialty will only pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting

43

from any Covered Cause of Loss, as those terms are defined and described therein. See Exhibit A.

22.    The BPP Coverage sets forth the types of property that constitute Covered Property under the Policy, and the types of property that constitute Property Not Covered.

23.    Under the BPP Coverage's "Building and Personal Property Coverage Form" ("Building Form"), QBE Specialty will only pay for "direct physical loss of or damage to Covered Property at the premises caused by or resulting from any Covered Cause of Loss.".

24.    "Covered Property" includes buildings and structures described in the Declarations, as well as business personal property as described in the Building Form.

25.    A prerequisite to coverage under the BPP Coverage therefore is that loss or damage be caused by a "Covered Cause of Loss."

26.    Cardinal bears the burden of demonstrating that coverage under the BPP Coverage is owed in the connection with its claims.

27.    Cardinal has not demonstrated that any of the losses for which it seeks coverage in this action in connection with the October 20, 2020 lightning strike were directly caused by a Covered Cause of Loss under the BPP Coverage.

28.    To the contrary, the damages and losses Cardinal seeks were instead caused by pre-lightning conditions, design, installation, defects, and/or operational problems caused by other entities.

29.    Cardinal previously pursued a lawsuit in this Court against those other entities alleging the same problems relating to its HVAC systems and related components and seeking the same damages and relief ("Cardinal Lawsuit"). See Cardinal Lawsuit Complaint, attached hereto as Exhibit B.

30.     As Cardinal's Lawsuit makes clear, Cardinal believed that the parties named therein were responsible for the same issues alleged in this action, which dated back to at least 2016, and caused the chronic problems, failures, damage and losses sought herein by Cardinal.

31.     Cardinal also has filed separate claims and litigation against some or all of these same entities relating to similar conditions and defects in the design, installation, and/or operation of similar HVAC systems at other properties entirely unrelated to the October 20, 2020 lightning strike at the Property.

32.     The information and documents provided by Cardinal relating to repairs, component replacement, and service to its HVAC system and related components further demonstrate that Cardinal's HVAC system suffered from ongoing failures, losses, problems and issues for years prior to the October 20, 2020 lighting strike.

33.     Beyond the foregoing, the BPP Coverage's Special Form contains multiple exclusions and limitations which otherwise preclude coverage for Cardinal's claimed losses in whole or in part. See Exhibit A.

34.     These exclusions exclude any loss or damage caused by or resulting from:

a.  the failure of power, communication, water, or other utility service supplied to the described premises, however caused, if the failure originates away from the described premises, or originates at the described premises, but only if such failure involves equipment used to supply the utility service supplied to the described premises from a source away from the described premises.

b.  artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any electrical device, appliance, system or network.

c.  wear and tear;

d.  corrosion, deterioration, or hidden or latent defect, or any quality in property that causes it to damage or destroy itself;

e.  mechanical breakdown;

f.  faulty, inadequate, or defective design, specifications, workmanship, materials, or maintenance;

g.  the presence or condensation of humidity, moisture, or vapor occurring over a period of 14 days or more;

h.  neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss;

i.  weather conditions if they contribute in any way with another enumerated cause or event excluded elsewhere in the BPP Coverage to produce the loss or damage;

j.  dampness or dryness of atmosphere or changes in or extremes of temperature, unless the stated exceptions apply.

### Coverage for Repair or Replacement

35.     The BPP Coverage otherwise provides that QBE Specialty will not pay on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced, or unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

36.     The BPP Coverage further provides that in the event of a covered loss, QBE Specialty at its option will (1) pay the value of lost or damaged property, (2) pay the cost of repairing or replacing the lost or damaged property, (3) take all or any part of the property at an agreed or appraised value, or (4) repair, rebuild or replace the property with other property of like kind and quality, whichever is less.

37.     QBE Specialty therefore has the option to select the option and remedy in connection with any loss covered under the BPP, and may select the least costly option.

38.     Aside from evidence of a covered loss, Cardinal has not demonstrated that any property that may be proven to be damaged by lightning has been repaired or replaced to implicate BPP Coverage under the Policy. Cardinal's claims otherwise seek coverage for allegedly damaged property that has not been repaired or replaced.

39.     Any actual repairs or replacements that were made were not made as soon as reasonably possible after the alleged loss or damage as required by the BPP Coverage.

40.     The BPP Coverage otherwise provides that QBE Specialty will not pay for loss or damage on a replacement cost basis more than *the least of* the Limit of Insurance applicable to the lost or damaged property, the cost to replace the lost or damaged property with other property, or the amount actually spent that is necessary to repair or replace the lost or damaged property. This is limited to repair or replacement of the *damaged property*.

41.     QBE Specialty also has not been provided with evidence from Cardinal demonstrating that less expensive options associated with repairing or replacing any actual lightning-damaged components do not exist.

42.     Based upon the lack of coverage for the claims, including Cardinal's lack of proof of covered losses under the BPP Coverage, QBE Specialty properly declined coverage.

43.     One or more declarations from this Court on these issues under the Policy's BPP Coverage thus are necessary to resolve these matters.

### Business Income/Extra Expense Coverage

44.     The Policy also provides "Business Income (and Extra Expense) Coverage Form" ("BI/EE Coverage")

45.    The BI/EE Coverage only provides coverage for "the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

46.    The "suspension" referenced in the BI/EE Coverage must be caused by "direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations," and the loss or damage must be caused by or result from a Covered Cause of Loss.

47.    As used therein, "operations" in the BI/EE Coverage means "a. Your business activities occurring at the described premises; and b. The tenantability of the described premises, if coverage for Business Income Including 'Rental Value' or 'Rental Value' applies."

48.    Additionally, "suspension" means "a. The slowdown or cessation of your business activities; or b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including 'Rental Value' or 'Rental Value' applies."

49.    The BI/EE Coverage requires that "[t]he loss or damage must be caused by or result from a Covered Cause of Loss."

50.    Further, "period of restoration" as used in the Policy is defined as "the period of time that: a. Begins: (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage; caused by or resulting from any Covered Cause of loss at the described premises; and b. Ends on the earlier of: (1) The date when the property at

the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."

51.    The Policy's BI/EE Coverage applies only in the event of a "suspension" of Cardinal's operations.

52.    No evidence has been provided to date by Cardinal that:

a.    It has sustained actual losses of Business Income due to the necessary suspension of its operations caused by "direct physical loss of or damage to property at premises as a result of the October 20, 2020 lightning strike,

b.    its operations have actually slowed or ceased directly as a result of the October 20, 2020 lightning strike, or

c.    any portion of the Property has in fact been rendered "untenantable" directly as a result of the October 20, 2020 lightning strike.

53.    Further, absent direct physical loss or damage from lightning, by definition Cardinal cannot establish a period of restoration implicating Business Income in the first instance.

54.    QBE Specialty otherwise has not received adequate proofs from Cardinal on the foregoing to support coverage despite numerous requests for such proofs.

55.    The BI/EE Coverage Form additionally provides coverage for Extra Expense, which is defined to mean "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." As above, QBE Specialty has not received any evidence demonstrating that any necessary expenses were incurred by Cardinal that were directly caused by the October 20, 2020 lightning strike. Absent direct physical loss or damage from lightning, by definition Cardinal also cannot establish a period of restoration implicating Extra Expense in the first instance. Again, Cardinal has not

demonstrated that any damage, malfunctions, or failures of the HVAC system at the Property were caused by lightning, and accordingly has not supported any claim of incurred extra expenses covered under these Policy provisions in connection with the October 20, 2020 lightning strike. Cardinal has not provided adequate documentation otherwise supporting any claimed losses for any such claims despite repeated requests. Consequently, QBE Specialty is unable to provide coverage for any claims seeking coverage for Extra Expense losses under this portion of the Policy.

56.    Based upon the lack of coverage for the claims, including Cardinal's lack of proof of covered losses under the BI/EE Coverage, QBE Specialty properly declined coverage.

57.    Coverage is only available under the Equipment Breakdown Coverage for direct physical damage to Covered Property that is the direct result of an "accident" or "electronic circuitry impairment," as those terms are defined in the Policy.  There is no coverage available under this form unless the aforementioned definitions have been satisfied, and if any of the exclusions to that coverage apply.

58.    One or more declarations from this Court on these issues under the Policy's BI/EE Coverage thus are necessary to resolve these matters.

### Policy Conditions and Other Applicable Provisions

59.    Beyond the foregoing, pursuant to the Policy's "Commercial Property Conditions" Endorsement coverage is only provided for loss or damage commencing during the Policy's policy period.

60.    Cardinal Square has been aware of the same issues relating to the property and HVAC systems at issue in this action since 2016 or earlier, and has been litigating against other entities in connection with these issues since 2018.

61.    Accordingly, Cardinal's claims involve loss or damage to property that commenced outside of the policy period for the Policy, and therefore is otherwise not covered.

62.    The Policy also contains a "Concealment, Misrepresentation or Fraud" Condition, which precludes coverage for concealing, misrepresenting, or failing to disclose any material fact or any fraud committed at any time relative to any claim, loss, or damage.

63.    Cardinal failed to disclose to and/or concealed from QBE Specialty the preexisting HVAC problems, failures, and related losses, which reportedly date back to at least 2016, either in connection with its procurement of insurance or its claims for coverage under the Policy.

64.    Cardinal also failed to disclose to and/or concealed from QBE Specialty the prior claims against other entities relating to the preexisting HVAC problems, failures, and related losses, including through the Cardinal Lawsuit which dates back to 2018, either in connection with its procurement of insurance or its claims for coverage under the Policy.

65.    Cardinal therefore concealed, misrepresented, or failed to disclose material facts and/or committed fraud in connection with the claims, losses, and damages sought from QBE Specialty under the Policy in violation of this Policy Condition.

66.    The Policy Conditions also require that Cardinal cooperate with QBE Specialty in connection with any claim for coverage.

67.     In addition to the foregoing, Cardinal also has failed to cooperate with QBE Specialty in connection with its claims, including its failure or refusal to provide necessary proofs, documents, items, and other information relating to its claims as reasonably requested by QBE Specialty on numerous occasions.

68.     Further, coverage under both the Building and BI/EE Coverage Forms also do not apply to losses or damage caused directly or indirectly by the failure or surge of power. (Special Form § B.1.e.). Coverage also is not available under the Building and BI/EE Coverage Forms for loss or damage caused by or resulting from artificially generated electrical or electromagnetic energy, including electrical current, arcing, charge or electromagnetic energy, that disturbs, disrupts, or otherwise interferes with any electronic device, system, network, or device, system or network using cellular or satellite technology (Special Form § B.2.a.).

69.     To the extent that any of the losses or damage claimed by Cardinal were caused by or resulted from loss or surge of power or artificially generated electrical or electromagnetic energy, there also is no coverage under the Policy.

70.     Other Policy Conditions relating to notice, consent, and loss payment and valuation also may apply to preclude or limit in whole or in part any coverage that otherwise may be available for Cardinal's claims.

71.     Pursuant to the foregoing, coverage is not provided for Cardinal's claim under the Policy based upon Cardinal's violations of multiple Policy Conditions.

72.     One or more declarations from this Court on these Policy Conditions thus are necessary to resolve these matters.

## COUNT I:  DECLARATORY JUDGMENT REGARDING INSURANCE COVERAGE

73.    Plaintiff QBE Specialty incorporates, as if fully set forth herein, the allegations contained within Paragraphs 1 through 75 of this Counterclaim.

74.    QBE Specialty reasonably disputes that insurance coverage is owed to Cardinal in connection with Cardinal's claim.

75.    QBE Specialty believes that certain terms, conditions, exclusions, and endorsements in the Policy, including as set forth herein, either do not provide coverage, or apply to preclude coverage for Cardinal's claim.

76.    QBE Specialty is entitled to a declaration from this Court that QBE Specialty has no obligation to provide insurance coverage to Cardinal under the Policy and applicable law in connection with Cardinal's claims.

77.    QBE Specialty also relies upon other terms, definitions, exclusions, conditions, and endorsements in the Policy, as attached to this Complaint, as well as applicable law, that preclude or limit insurance coverage, in whole or in part, including as may be determined by QBE Specialty's further investigation relating to the claims at issue or this declaratory judgment counterclaim.

78.    QBE Specialty requests that the Court issue one or more other declarations as appropriate to fully resolve all disputes and matters that are at issue or that are placed at issue in this counterclaim.

WHEREFORE, Plaintiff QBE Specialty Mutual Insurance Company prays for the following relief:

1.    For a declaration that QBE Specialty has no obligation to provide coverage for Cardinal's claim;

2.    For its reasonable attorneys' fees and costs incurred in prosecuting this counterclaim and seeking this relief; and

3.    For such other declarations and/or other relief that is just and proper herein.

Respectfully submitted,

/s/ Bradford S. Moyer
Bradford S. Moyer (#25964-49)
Pamela A. Paige (#16163-49)
PLUNKETT COONEY, P.C.
201 North Illinois Street
South Tower, 16th Floor
Indianapolis, IN 46204
(317) 964-2738 Phone
(248) 901-4040 Fax

Kenneth C. Newa (#30474-49)
PLUNKETT COONEY, P.C.
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000 Phone
(248) 901-4040 Fax

**Attorneys for QBE Specialty Insurance Company**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

CARDINAL SQUARE, LLC,

      Plaintiff,

v.

QBE SPECIALTY INSURANCE COMPANY,

      Defendant.

Case No. 1:23-cv-00114-JRS-MJD
Hon. James R. Sweeney, II
Magistrate Judge Mark J. Dinsmore

_____

<u>**RELIANCE UPON JURY DEMAND**</u>

      Plaintiff QBE Specialty relies upon the Jury Demand previously filed by Cardinal Square, LLC in this matter, for all claims and counterclaims in this action.

Respectfully submitted,

*/s/ Bradford S. Moyer*
Bradford S. Moyer (#25964-49)
PLUNKETT COONEY, P.C.
201 North Illinois Street
South Tower, 16th Floor
Indianapolis, IN 46204
(317) 964-2738 Phone
(248) 901-4040 Fax


*/s/ Kenneth C. Newa*
Kenneth C. Newa (#30474-49)
PLUNKETT COONEY, P.C.
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000 Phone
(248) 901-4040 Fax

Dated:  February 28, 2023      *Attorneys for QBE Specialty Insurance Company*

Open.25883.11554.30563240-1